# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DAN CHARLEY, )<br>)<br>    Petitioner, )<br>)<br>v. )<br>)<br>DEWAYNE ESTES and the )<br>ATTORNEY GENERAL FOR )<br>THE STATE OF ALABAMA, )<br>)<br>    Respondents. ) | CIVIL ACTION NO.<br>4:12-CV-1069-VEH-JEO |

## MEMORANDUM OPINION

This is an action on a *pro se* petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (Doc. 1).[1] It was filed by Dan Charley, an Alabama state prisoner serving a life sentence at the Limestone Correctional Facility in Harvest, Alabama, following his conviction for rape in the first degree. On February 19, 2015, the magistrate judge entered a report pursuant to 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b)(1) recommending that Charley's habeas petition be denied in its entirety. (Doc. 21 ("R&R")). After being granted several extensions, on April 15, 2015, Charley timely filed a 55-page objection to the magistrate judge's R&R (with an

---

[1]  References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system. Unless otherwise noted, pinpoint citations are to the page of the electronically filed document, which may not correspond to pagination on the original "hard copy."

attached 37 pages of exhibits) (Doc. 30). In addition, on March 5, 2015, the State filed what is effectively a *pro forma* objection, whose goal is to preserve its argument that many of the claims of ineffective assistance of counsel that the Magistrate Judge's R&R rejects on the merits are also procedurally defaulted. (Doc. 24).

In Charley's objection, he rehashes most of the arguments from his petition and other filings made in response to the State's Answer. It will suffice to say that the undersigned agrees with the magistrate judge's thorough discussion and disposition of those arguments in his 72-page R&R. However, Charley's objection also include arguments based on additional evidence that he now offers for the first time. That new evidence relates to Charley's habeas claims regarding the testimony of Wendy Mathis, the Sexual Assault Nurse Examiner ("SANE") who, on June 7, 2006, performed the rape kit examination of the victim, J.J., at the Crisis Center Clinic she ran in Birmingham. As discussed in the R&R, Mathis testified at Charley's trial in April 2007 that her exam revealed a one centimeter injury just below J.J.'s vaginal opening that was consistent with recent intercourse and that she microscopically observed sperm cells in a swab sample taken from J.J.'s vaginal canal. Subsequently, Jaclyn Bowling, a DNA examiner with the Alabama Department of Forensic Sciences, testified that the genetic traits in the rape kit vaginal swab taken from J.J. matched the traits in a swab taken from Charley.

The evidence that Charley now offers shows that on May 11, 2008, about a year after Charley's trial had concluded, the Alabama State Board of Nursing (the "Board") issued a "Statement of Charges and Notice of Hearing" advising that the Board was pursuing disciplinary action against Mathis, pursuant to ALA. CODE § 34-21-25. (Doc. 30 at 57-69). The Board alleged therein that Mathis's certification as a Certified Registered Nurse Practitioner ("CRNP") had lapsed in 2002 and that, on January 4, 2008, her employment with the clinic in Birmingham had been terminated due to her misrepresentation of her CRNP certification and for failing to comply with the clinic's standards, policies, and procedures. (Doc. 30 at 59-61, §§ IV, V, VI). The Board further charged in the Statement as follows:

> On or about January 4, 2008, the Crisis Center facility, which was under the control of [Mathis], was found to be in a state of disarray, and photo documentation of such was taken, upon [Mathis's] termination. In particular, the following was observed:
>
> • Multiple medical charts left in an open area
>
> • Multiple State of Alabama Evidence Collection "Kits" (for collection of sexual assault evidence) left unsealed and unsecured throughout the office
>
> • Copies of multiple charts and fronts of kits in open area
>
> • Photograph of victim on top of filing cabinet in open area
>
> • Open paper bag containing a chart and an unsealed kit

3

- Refrigerator containing numerous urine and blood samples in Zip1oc bags, refrigerator unlocked and not marked as containing evidence

- Unmarked, uncovered plastic cup containing urine

- Overflowing sharps container containing a butterfly device not completely disposed

- Medications stored in unlocked cabinet

- Unsealed kit containing swabs

- Non-encased slides

- Open swabs in swab dryer

- Open kits in exam room visible to victims

- Porous wood block used for swab dryer

- Unlabelled swabs and slides

- Stacks of papers with identifying victim information

- Failure to engage locking mechanisms on storage cabinets and areas intermingling of food, garbage, office supplies, and evidence collection media

(Doc. 30 at 61-62, § VII; *see also id.* at 85-87). Based upon these and other allegations, the Board charged Mathis in fourteen counts with violating a host of administrative regulations and gave notice of its intent to seek disciplinary action, setting a hearing for June 22, 2010. (*See id.* at 57-69). It is unclear why the hearing

was set for a date more than two years after the issuance of the disciplinary charges. In any event, it appears that the hearing did not take place as scheduled, for on the day after it was to be held, the Board issued another, nearly identical charging document against Mathis, resetting the hearing for July 27, 2010. (*Id.* at 70-82). On July 26, 2010, however, Mathis signed a document by which she waived her right to a hearing and voluntarily surrendered her nursing license. (Doc. 30 at 83). The Board formally revoked Mathis's license the following day. (Doc. 30 at 84 ).

Although not presented to the magistrate judge, the court will, in its discretion, consider Charley's additional evidence it as part of its *de novo* review. *See* 28 U.S.C. § 636(b)(1); *Drew v. Department of Corr.*, 297 F.3d 1278, 1289 n.4 (11th Cir. 2002); *Wofford v. Wainwright*, 748 F.2d 1505, 1507 (11th Cir. 1984). Charley argues that such evidence supports his claims (1) that Mathis was not qualified to testify as an expert, (2) that the rape kit evidence was inadmissible because Mathis collected it in unsanitary conditions at the clinic, and (3) that his counsel was ineffective for failing to raise such objections at trial. However, because Charley's counsel did not so object, the first two claims are procedurally defaulted; only an ineffective-assistance theory is even potentially viable. In order to prevail on a claim of ineffective assistance of counsel, a petitioner bears the burden to plead and prove circumstances showing (1) that "counsel's performance was deficient," and (2) "that the deficient

performance prejudiced the defense" because the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Because it was not until well after Charley's trial that the clinic terminated Mathis's employment, the Board took any steps towards disciplining Mathis, or Mathis surrendered her nursing license, Charley's trial counsel could not possibly have been ineffective for failing to discover or use such evidence. *See Dell v. United States*, 710 F.3d 1267, 1274 (11th Cir. 2013); *Jones v. Campbell*, 436 F.3d 1285, 1296 (11th Cir. 2006). Charley also urges that the Board's evidence corroborates his previously-offered affidavits of Rebecca Stribling and Faye Hartley, employees of the group home Charley operated who were present for J.J.'s rape kit examination and who allegedly told Charley's counsel prior to trial that Mathis's clinic was "filthy" and otherwise unprofessional looking. However, the Board's evidence related to contemplated discipline against Mathis, including photographs of the clinic, did not exist at the time of Charley's trial. And as explained in the R&R, under Alabama law, any testimony that defense counsel might have elicited about the conditions of the clinic would have gone only to the weight of Mathis's testimony, not its admissibility, and would not have had any reasonable probability to alter the jury's verdict given Charley's videotaped confession, his wife's admission that he confessed to her as

well, and the other overwhelming evidence of his guilt. (*See* R&R at 27-30).

Insofar as Charley is now claiming that his trial counsel was ineffective for failing to investigate Mathis's credentials and qualifications with the Board, that specific claim was not fairly presented and exhausted in the Alabama courts and is now procedurally defaulted. Even considered on the merits, the claim is due to be denied. When assessing an attorney's decision to limit an investigation, courts must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Charley offers nothing to support that his counsel had any reason to suspect at the time of the trial that Mathis's CRNP certification, license, or expert qualifications might have been subject to doubt, given that she had performed thousands of sexual assault examinations, taught classes on the subject, and had testified in the Alabama courts as an expert numerous times. *See Leon v. Ryan*, 2014 WL 289980, at *15 (D. Ariz. Jan. 27, 2014); *cf. Skaggs v. Parker*, 235 F.3d 261, 267-68 (6th Cir. 2001) (holding that defense counsel were not ineffective in failing to investigate credentials of purported licensed clinical and forensic psychologist before presenting him as expert witness on insanity defense, considering counsel's familiarity with such person as expert witness, even though credentials were falsified). Accordingly, trial counsel's

failure to inquire with the Board about Mathis's credentials was not unreasonable as required to establish deficient performance under *Strickland*. Charley's allegations also do not establish actual prejudice given (1) that Mathis still might have qualified as an expert, notwithstanding any questions about the validity of her CRNP certificate, as she was still a licensed nurse and had substantial experience in the field, (2) that Mathis still could have testified as a fact witness as it related to her own actions and events within her personal knowledge, including her observations upon her physical examination of J.J. and her collection of the rape kit evidence, and (3) the other overwhelming evidence of Charley's guilt as referenced above.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the magistrate judge's Report and Recommendation and the parties' respective Objections thereto, the court is of the opinion that the magistrate judge's findings are due to be and are hereby **ADOPTED** and his recommendation is **ACCEPTED**. The objections of the Petitioner and the State are both **OVERRULED**. As a result, the petition for writ of habeas corpus is due to be denied and this action is due to be **DISMISSED WITH PREJUDICE**. Further, because the petition does not present issues that are debatable among jurists of reason, a certificate of appealability is also due to be **DENIED**. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); Rule 11(a), RULES GOVERNING § 2254 PROCEEDINGS.

A separate Final Judgment Order will be entered.

**DONE** and **ORDERED** this the 14th day of May, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge